**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| MemoryWeb, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 6:21-cv-531 |
| | § | |
| Apple, Inc., | § | **Jury Trial Demanded** |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## COMPLAINT

Plaintiff MemoryWeb, LLC ("Plaintiff" or "MemoryWeb") by its attorneys, as and for its Complaint against Defendant Apple, Inc. ("Defendant" or "Apple") states and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., including 35 U.S.C. §§ 271, 281, 283, 284 and 285.

## THE PARTIES

2.     MemoryWeb is a corporation existing and organized under the laws of the state of Illinois.  MemoryWeb has its principal place of business at 526 Crescent Blvd. Suite 233, Glen Ellyn, Illinois.

3.     Apple is a corporation existing and organized under the laws of the State of California.  Apple has its principal place of business at One Apple Park Way Cupertino, California.  Apple maintains one or more regular and established places of business in the Western District of Texas, including at least at: 3121 Palm Way, Austin, Texas; 2901 S.

1

Capital of Texas Hwy., Austin, Texas; 12535 Riata Vista Circle and 5501 West Parmer Lane, Austin, Texas; 8401 Gateway Boulevard West, El Paso, Texas; 15900 La Cantera Parkway, San Antonio, Texas; and 7400 San Pedro Ave., San Antonio, Texas.  Apple may be served with process through its registered agent in the state of Texas: CT Corporation, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

4.      This action arises under the patent laws of the United States of America, Title 35 of the United States Code. Accordingly, this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338.

5.      This Court has personal jurisdiction over Apple under the United States Constitution, the laws of the State of Texas, including Texas's long-arm statute, and the Federal Rules of Civil Procedure.  Apple has sufficient minimum contacts with this District, through at least its places of business at the addresses identified above, its acts of infringement within this District, and has continuously and systematically solicited and transacted business in this District such that this Court has personal jurisdiction over Apple.

6.      Apple is registered to do business in the State of Texas.

7.      Venue is proper in this District under 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b) because Apple has one or more regular and established places of business within this District and has committed acts of infringement in the District directly or indirectly— including through subsidiaries or intermediaries such as distributors, retailers, and contract manufacturers; by conducting its business extensively throughout the District by shipping, manufacturing, distributing, offering for sale, selling, and advertising infringing

products (including the associated software and operating systems) and services which practice one or more claimed methods in the Asserted Patents ("Accused Instrumentalities"); and by purposefully and voluntarily placing Accused Instrumentalities into this District and into the stream of commerce with the intention and expectation that they will be purchased and used in an infringing manner by consumers in this District. On information and belief, Apple also uses Accused Instrumentalities in this District.

8.      Apple markets, sells, and offers to sell Accused Instrumentalities to actual and potential customers and end-users located in the District including through its operation of retail stores in the District. Retail Apple Stores in this District include at least the following locations: 3121 Palm Way, Austin, Texas; 2901 S. Capital of Texas Hwy., Austin, Texas; 8401 Gateway Boulevard West, El Paso, Texas; 15900 La Cantera Parkway, San Antonio, Texas; and 7400 San Pedro Ave., San Antonio, Texas. Ex. 5.

9.      Apple also authorizes numerous third parties to sell infringing products in this District and advertises these locations on its website. For example, there are at least 99 Apple Shops in Austin, Texas authorized by Apple to sell iPhone and iPad products and at least 33 Apple Shops in Austin, Texas authorized by Apple to sell Mac products. Ex. 6; Ex. 7. There are at least 99 Apple Shops in San Antonio, Texas authorized by Apple to sell iPhone and iPad products and at least 28 Apple Shops in San Antonio, Texas authorized by Apple to sell Mac products. Ex. 8; Ex. 9. There are at least 99 Apple Shops in Waco, Texas authorized by Apple to sell iPhone and iPad products and at least 48 Apple Shops in Waco, Texas authorized by Apple to sell Mac products. Ex. 10; Ex. 11.

10.     On information and belief, Apple has derived substantial revenue from infringing acts in the Western District of Texas, including from the sale and use of Accused Instrumentalities.

11.     Apple employs thousands employees in this District in a variety of capacities, including at least the manufacturing of one or more Accused Instrumentalities, such as the Mac Pro product. Ex. 12. As of November 2019, Apple employed approximately 7,000 employees in this District and had invested over $200 million in its Austin facility. *Id.* Apple's website lists hundreds of job openings in Austin and the Austin metro area, including in the software and services, design, operations and supply chain, marketing, and sales and business development teams. Ex. 13.

12.     On or around November 20, 2019, Apple announced that it had broken ground on a new $1 billion, 3 million square foot campus in Austin that will start with 5,000 new employees and is anticipated to grow to as many as 15,000 employees. Ex. 12. Upon completion, Apple's Austin facility will be its second-largest campus in the world outside of its Cupertino headquarters.

13.     Apple is planning to build a 192-room hotel as part of its Austin campus, which appears scheduled for completion in 2022. Ex. 14. On information and belief, Apple intends for Apple employees traveling to Austin for business to stay at this hotel.

14.     There is significant local interest in this District due to Apple's long-standing relationship with and presence in the Austin area. Apple is one of the largest private employers in this District and is the largest private employer in Austin, Texas. On information and belief, Apple has or will receive millions of dollars in incentives in this District from state and local governments in exchange for its investments and continued

4

employment of individuals in this District, including taxpayer-funded grants from the Texas Enterprise Fund and a significant property tax cut from Williamson County. On information and belief, Apple would not have invested in and expanded its presence in this District, including its manufacturing of certain Accused Instrumentalities, without these taxpayer-funded incentives.

## BACKGROUND

## MemoryWeb's Innovative Technology

15.     MemoryWeb was founded in 2014 by Christopher J. Desmond, Nancy L. Desmond, and L. Michael Taylor ("the Founders").

16.     The Founders were avid curators of photographs, possessing stockpiles of digital and print photographs that they wanted to preserve and share (e.g., family photos and photos from other memorable events in their lives). The Founders recognized that the then-available technology was not able to manage, organize, and display their photos and related information in efficient and intuitive ways.

17.     Recognizing the drawbacks and limitations on prior attempts to manage, organize, and display digital photographs and related information, the Founders set out to develop an application that, among other things, would allow users to explore their libraries of photos using a variety of methodologies for more efficient digital file

organization and displaying digital files using intuitive views, such as a location view and a people view.

18.     The Founders chose the name "MemoryWeb" for their solution in recognition of the fact that memories are not just represented by photos alone, but by a web of information interconnecting those photos.

19.     The MemoryWeb application was launched in October 2016 and is presently available as a web application or as a native application for the Apple iOS and Android operating system platforms.

20.     The MemoryWeb application organizes and displays photos and related information using a variety of intuitive views, such as a "Location view" and a "People view."  For example, as shown in the images below, the MemoryWeb application can group photos by location using thumbnail images displayed on an interactive map.



21.     The map is interactive in that a user can, among other things, "zoom-in" or "zoom-out" to view photographs at a particular location on the geographic map.  For

example, as shown in the images below, a user can zoom-in to expand the map towards a particular in Europe, for example.



22.     By selecting one of the thumbnail images on the interactive map, the user can navigate to a location view including the location name and the photographs taken at that location, for example, as shown in the image below.



23.     The MemoryWeb application also organizes and displays photos and related information in an intuitive manner based on the people in the photos.  The MemoryWeb application utilizes facial recognition technology to automatically identify people in

photographs.  An exemplary People View including thumbnail images and person names is shown in the image below.



24.     By clicking one of the thumbnail images associated with a particular individual, the user can navigate to a "Person view" including images of the selected person.



25.     MemoryWeb's efforts in developing innovative digital file organization and display technology has resulted in the issuance of six issued U.S. patents (including the patents asserted in this Complaint), with additional patents pending.

## The Asserted Patents

26.     MemoryWeb asserts four patents in this Complaint for patent infringement: U.S. Patent No. 9,552,376, U.S. Patent No. 10,423,658, U.S. Patent No. 10,621,228, and U.S. Patent No. 11,017,020.   These patents are collectively referred to the "Asserted Patents" herein.

27.     MemoryWeb is presently the owner of the entire right, title, and interest in and to each of the Asserted Patents, and has the exclusive right to sue for and recover all past, present, and future damages for infringement of the Asserted Patents.

**A.      U.S. Patent No. 9,552,376**

28.     On January 24, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,552,376 ("the '376 patent"), entitled "Method and Apparatus for Managing Digital Files."   A true and correct copy of the '376 patent is attached hereto as Exhibit 1.

29.     The '376 patent is currently in full force and effect.

**B.      U.S. Patent No. 10,423,658**

30.     On September 24, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,423,658 ("the '658 patent"), entitled "Method and Apparatus for Managing Digital Files."   A true and correct copy of the '658 patent is attached hereto as Exhibit 2.

31.     The '658 Patent is currently in full force and effect.

**C.     U.S. Patent No. 10,621,228**

32.     On April 14, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,621,228 ("the '228 patent"), entitled "Method and Apparatus for Managing Digital Files."  A true and correct copy of the '228 patent is attached hereto as Exhibit 3.

33.     The '228 patent is currently in full force and effect.

**D.     U.S. Patent No. 11,017,020**

34.     On May 25, 2021, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,017,020 ("the '020 patent"), entitled "Method and Apparatus for Managing Digital Files."  A true and correct copy of the '020 patent is attached hereto as Exhibit 4.

35.     The '020 patent is currently in full force and effect.

**E.     The Technological Improvement Needed for Managing, Organizing and Displaying Digital Files**

36.     Prior to the advent of digital photography, printed photographs were typically preserved and displayed in frames or photo albums.  In order to capture relevant information about these photographs, people would often inscribe information on the back of printed photographs to associate that photograph with a particular memory or occasion. For example, information such as the identification of individuals pictured, and the date and location the photograph was taken may be inscribed on the back of the printed

photograph.  People might also assemble photo albums or slides for a particular memory or event so as to associate or link certain photographs with those memories or events.

37.     As the use of personal electronic devices with cameras (e.g., smartphones) exploded, consumers continued to create and store an ever-expanding number of digital photos and videos.  The cameras embedded in such devices have evolved to the point where many consumers use the smartphone as their primary, or only, camera.  Indeed, many smartphone manufacturers tout camera features in advertising as a key selling point.

38.     While such devices and other services allowed the storage and retrieval of digital photos and videos, effective methods for efficiently and intuitively organizing, locating and displaying digital files—or subsets of those files—did not exist prior to the inventions disclosed in the Asserted Patents.  Consumers seeking to find, view or display a particular photo within a vast library of photos would often need to search through large and complex interfaces by, for instance, scrolling through a photo library of thousands of pictures taken over months or years to find a particular photo from a particular time or event.

39.     The Asserted Patents recognized a need for systems and methods that "allow[] people to organize, view, preserve these files with all the memory details captured, connected and vivified via an interactive interface."  Ex. 1 ('376 patent) at 1:54-58.  To address these and other problems, the Asserted Patents disclose and claim, among other things, methods for intuitively organizing and displaying digital files such as digital photographs and videos.

40.     For example, the Asserted Patents disclose and claim a map view including an interactive map.  Referring to FIG. 41 of the '376 patent (reproduced below), a map view

including an interactive map can be displayed. "In this view, individual or groups of Digital

Files are illustrated as photo thumbnails (see indicators 0874 and 0875)) on the map and

the user can select the thumbnail to see all the Digital Files with the same location (as seen

FIG. 34 (indicator 1630)) or the user can use the interactive map and narrow the map view

by either using the Zoom in/Zoom out bar (0876) on the left or simply selecting the map."

'376 patent at 29:33-40.

**FIG. 41**



41.     As shown in FIG. 41, each thumbnail image includes an indication of the

number of digital files, such as photos and/or videos, at the associated location. *Id*. at

29:40-42.  In the example shown in FIG. 41, the indication on thumbnail 0874 indicates 1

digital file associated with that location and the indication on thumbnail 0875 indicates 3

digital files associated with that location.

42.     The map view disclosed in the Asserted Patents allows users to efficiently and intuitively locate one or more digital files, such as photographs and/or videos, based on the location where file was generated.  The map view also allows a user to intuitively visualize where digital files within the user's library were generated, and the relative number of digital files generated at given locations.

43.     As described in the specification, the interactive map in the map view allows users to zoom in and out to view digital files at certain locations with varying levels of specificity.  '376 patent at 37-40.  For instance, when zoomed out as shown in FIG. 41, the user may see thumbnail image 0874 in North America and thumbnail image 0875 in Europe on the interactive map.  By zooming in (e.g., generally on the North America portion of the map), the user can narrow the map view and may see additional thumbnail images. Zooming in further on, for example, a particular city, the user may see one or more thumbnail images in a downtown area and one or more thumbnail images in a suburban area.  In this way, the map view disclosed in the Asserted Patents allows users to efficiently and intuitively locate digital files based on location.

44.     The Asserted Patents also disclose one or more location views for organizing and displaying digital files.  FIG. 34 (reproduced below) illustrates an exemplary location view.



45.    The location views disclosed in the Asserted Patents allow users to efficiently and intuitively locate digital files associated with a particular location.  The "Multiple Location Application View" shown in FIG. 34 "is used to display all the locations that were created within the user's Application (1600)."  '376 patent at 24:3-6.  In the "Single Location Application View" shown in FIG. 34, "a single location (1630) is illustrated," which includes "[t]he individual location name" and "[t]humbnails of each Digital File within the specification collection."  *Id*. at 24:24-28.  Additionally, "an interactive map displaying a Zoomed-in image of the specific location is displayed (1635)."  *Id*. at 24:39-41.

46.    The Asserted Patents additionally disclose one or more people views for organizing digital files based on associated people.  For example, referring to FIG. 32 (reproduced below), the people view includes a plurality of people selectable thumbnail

images. Selecting one of the thumbnail images in the people view causes a person view (shown below with annotations in color) to be displayed that includes the name of the selected person and at least one digital file associated with that person.



47.     As illustrated by at least the foregoing examples, the Asserted Patents are directed to improved user interfaces for computing devices. More specifically, the Asserted Patents are directed to a particular manner of summarizing and presenting particular sets of digital files such as photos and/or videos on computing devices. For example, a user might be looking for one photograph out of tens of thousands, but knows that the photograph was taken while on vacation in Florida. The user can more easily retrieve that photo by navigating to Florida on the interactive map. As another example, the user knows that one of her siblings was in the photograph, and can more easily retrieve the photograph

through the people view.  In at least these ways, the Asserted Patents provide highly intuitive, user-friendly interfaces for navigating through many (e.g., hundreds or thousands) of files to find a particular file.

## APPLE INFRINGES MEMORYWEB'S PATENTS

48.    Apple has infringed MemoryWeb's valuable and proprietary intellectual property, including at least the patents asserted in this Complaint.  Apple is using MemoryWeb's patented technology without a license or MemoryWeb's permission.

49.    In particular and as described below, Apple makes, uses, sells, offers to sell, and imports multiple software operating systems including a photo application for organizing and displaying digital files such as photos and videos.  Apple also makes, uses, sells, offers to sell, and imports one or more products including on which such operating systems are installed.  The Accused Instrumentalities include, collectively, the products incorporating the operating systems discussed herein.

### A.    Apple's macOC Software/Operating System and Related Products

50.    For instance, Apple's macOS software includes a photo application that organizes and displays photos and videos according the methods claimed in the Asserted Patents.  By way of representative example only, Apple macOS 11.0 (Big Sur) displays a map view including an interactive map with thumbnail images.  The images below, including the text accompanied by the image, appear in Apple's Photos User Guide.



Ex. 15

51.    Each thumbnail image in the map view includes an indication of the number of photos taken at the associated location.



Ex. 15

52.    As a second example, Apple macOS 11.0 (Big Sur) displays one or more people views including thumbnail images associated with different people.



Ex. 16

53.     As a third example, Apple macOS 11.0 (Big Sur) organizes photos and videos by date, month, and year.



Ex. 17

54.     Other versions of the Apple macOS software include the same or similar digital file organization and display features and capabilities, including at least macOS 10.15 (Catalina), macOS 10.14 (Mojave), and macOS 10.13 (High Sierra).

55.     On information and belief, at the least the following Apple products include and use the Apple macOS software versions described above or substantially similar versions:  MacBook Air (inzcluding, but not limited to, the MacBook Air (M1, 2020), MacBook Air (Retina, 2020), MacBook Air (Retina, 2019), MacBook Air (Retina, 2018), and MacBook Air (2017) models), MacBook Pro (including, but not limited to the MacBook Pro 16-inch (2019), MacBook Pro 15-inch (2019), MacBook Pro 15-inch (2018), MacBook Pro 15-inch (2017), MacBook Pro 15-inch (2016), MacBook Pro 13-in. (M1, 2020), MacBook Pro 13-inch (2020, four ports), MacBook Pro 13-inch (2019, four ports), MacBook Pro 13-inch (2018, four ports), MacBook Pro 13-inch (2017, four ports), MacBook Pro 13-inch (2016, four ports), MacBook Pro 13-in. (2020, two ports), MacBook Pro 13-in. (2019, two ports), MacBook Pro 13-inch (2017, two ports), MacBook Pro 13-inch (2016, two ports) models), iMac (including, but not limited to, the iMac 21.5-in. (Retina 4K), iMac 27-in. (Retina 5K), iMac Pro, Mac mini (M1, 2020), and Mac mini (2018) models), and Mac Pro. On information and belief, additional Apple products are compatible with and use the Apple macOS software versions described above, or substantially similar versions.  Each product identified above is included in the Accused Instrumentalities.

56.     On information and belief, Apple manufactures in Austin, Texas certain Accused Instrumentalities, such as the Mac Pro products, that include or use one or more of the aforementioned macOS software versions.

**B.    Apple's iOS Software/Operating System and Related Products**

57.     Apple's iOS software also includes a photo application that organizes and displays photos and videos according to methods claimed in the Asserted Patents.  By way of representative example only, Apple iOS 14 displays a map view including an interactive

map.  The images and descriptions reproduced below appear in Apple's iPhone User Guide.

## Browse photos by location on iPhone

The Photos app 🌸 creates collections of your photos and videos in the Places album based on where they were taken. View photos taken in a specific location, or look for photos taken nearby. See a collection of all your places on a map, or even watch a Memory movie of a certain place.

### Browse photos by location

1. Tap the Albums tab, then tap the Places album.

2. Select Map or Grid view.

   Only pictures and videos that have embedded location information (GPS data) are included.

   💡 **Tip:** Zoom in and drag the map to see more specific locations.

Ex. 18

58.    Apple iOS software also allows a user to swipe up on an individual photo to view a map image showing where that photo was taken.

## See where a photo was taken

1. Open a photo, then swipe up to see the photo details.

2. Tap the map or address link to see more details.

Ex. 18

59.    As a second example, Apple iOS 14 displays one or more people views including thumbnail images associated with different people.

## Find photos of a specific person

To find photos of a specific person, do either of the following:

- In the Albums tab, tap the People album, then tap a person to see all of the photos they're in.

- In the Search tab, enter a person's name in the search field.

Ex. 19



Ex. 20



Ex. 21

60.    As a third example, Apple iOS 14 organizes photos and videos by date, month, and year.

### Browse photos

The photos and videos on your iPhone are organized by Years, Months, Days, and All Photos in the Library tab. You can rediscover your best shots in Years, relive significant events in Months, focus on unique photos in Days, and view everything in All Photos.

To browse your photos, tap the Library tab, then select any of the following:

- *Years:* Quickly locate a specific year in your photo library, and see significant events highlighted in a slideshow.

- *Months:* View collections of photos that you took throughout a month, organized by significant events —like a family outing, social occasion, birthday party, or trip.

- *Days:* View your best photos in chronological order, grouped by the time or place the photos were taken.

Ex. 22

61.    Other versions of the Apple iOS software include the same or similar digital file organization and display features and capabilities, including at least iOS 13, iOS 12, iOS 11, and iOS 10.

62.    On information and belief, at least the following Apple products include and use the Apple iOS software versions described above or substantially similar versions: iPhone (including, but not limited to, the iPhone 12 Pro Max, iPhone 12 Pro, iPhone 12, iPhone 12 mini, iPhone SE, iPhone 11 Pro Max, iPhone 11 Pro, iPhone 11, iPhone XS Max, iPhone XS, iPhone XR, iPhone X, iPhone 8 Plus, iPhone 8, iPhone 7 Plus, and iPhone 7 models), iPad (including, but not limited to, the), and iPod Touch (including, but not limited to, the iPod Touch 7th Generation models), iPad (including, but not limited to, the iPad Air (3rd Generation), iPad Pro 12.9-inch (2nd Generation), iPad Pro 12.9-inch (3rd Generation), iPad Pro 10.5-inch (2nd Generation), iPad Pro 10.5-inch (3rd Generation), iPad Pro 11-inch (1st Generation) iPad (5th Generation), iPad (6th Generation), and iPad Mini (5th Generation) models), iPod Touch (including, but not limited to, the iPod Touch (6th Generation) and iPod Touch (7th Generation) models).  On information and belief, additional Apple products are compatible with and use the Apple iOS software versions

22

described above, or substantially similar versions. Each product identified above is included in the Accused Instrumentalities.

**C.    Apple's iPadOS Software/Operating System and Related Products**

63.    Apple's iPadOS operating system software also includes a photo application that organizes and displays photos and videos according to methods claimed in the Asserted Patents. By way of representative example only, Apple iPadOS 14 displays a map view including an interactive map. The images and descriptions reproduced below appear in Apple's iPad User Guide.

## Browse photos by location on iPad

The Photos app 🔴 creates collections of your photos and videos in the Places album based on where they were taken. View photos taken in a specific location, or look for photos taken nearby. See a collection of all your places on a map, or even watch a Memory movie of a certain place.

---

## Browse photos by location

1. Swipe from the left edge of the screen or tap ▭ to show the sidebar, then tap Places.
2. Select Map or Grid view.

   Only pictures and videos that have embedded location information (GPS data) are included.

   💡 **Tip:** Pinch to zoom in and out, or drag the map to see more locations.

Ex. 23

64.    Apple iPadOS software also allows a user to swipe up on an individual photo to view a map showing where that photo was taken.

## See where a photo was taken

1. Open a photo, then swipe up to see the photo details.
2. Tap the map or address link to see more details.

Ex. 23

65.    As a second example, Apple iPadOS 14 displays one or more people views including thumbnail images associated with different people.

### Find people in Photos on iPad

The Photos app 🌼 scans your photo library for people's faces and adds the most frequently found faces to the People album. When you add names to the faces, you can search for photos by name.

*Note:* With iCloud Photos, your People album is kept up to date on all your devices that meet these minimum system requirements: iOS 11, iPadOS 13, and macOS 10.13. (You must be signed in with the same Apple ID on all the devices.)

### Find photos of a specific person

To find photos of a specific person, swipe from the left edge of the screen or tap ⬚ to show the sidebar, then do either of the following:

- Tap the People album, then tap a person to see all of the photos they're in.
- Tap Search, then enter a person's name in the search field.

Ex. 24

66.    As a third example, Apple iPadOS 14 organizes photos and videos by date, month, and year.



Ex. 25

67.    Other versions of the Apple iPadOS software include the same or similar digital file organization and display features and capabilities, including at least iPadOS 13.

68.     On information and belief, at the least the following Apple products include and use the Apple iPadOS software versions described above or substantially similar versions: iPad (7th Generation), iPad (8th Generation), iPad Pro 12.9-inch (4th Generation), iPad Pro 11-inch (2nd Generation), and iPad Air (4th Generation).  On information and belief, additional Apple products are compatible with and use the Apple iPadOS software versions described above, or substantially similar versions.  Each product identified above is included in the Accused Instrumentalities.

69.     While certain Apple products are identified in this Complaint as examples of Apple's infringement, these examples in no way limit the discovery and infringement allegations against Apple concerning other software and/or devices that incorporate the same or similar functionalities.  MemoryWeb reserves the right to discover and pursue any additional infringing products or services.

## COUNT I – INFRINGEMENT OF THE '376 PATENT

70.     MemoryWeb repeats and realleges the allegations in the preceding paragraphs above as if fully set forth herein.

71.     The '376 patent is valid and enforceable.

72.     Apple has directly infringed and continues to directly infringe one or more claims of the '376 patent, both literally and under the doctrine of equivalents, by making, using, offering for sale, selling within the United States and imported into the United States, without permission or license from MemoryWeb, Accused Instrumentalities that embody or practice the inventions disclosed and claimed in the '376 patent in violation of 35 U.S.C. § 271(a).

73.     To the extent Apple does not perform each and every step of a particular asserted method claim of the '376 patent, Apple directs or controls the performance by others of each step of such asserted method claims of the '376 patent that is does not perform itself, such that the performance of each step of the asserted method claims can be attributed to Apple.

74.     Apple actively induces direct infringement by others of one or more claims of the '376 patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(b).  For example, Apple induces infringement of one or more claims of the '376 patent when end users operate Accused Instrumentalities, including the photo application, in their intended manner.

75.     On information and belief, Apple had knowledge of the technology described in the '376 patent prior to the filing of this Complaint and may have had actual knowledge of the '376 patent.  Apple cited U.S. Patent Publication No. 2014/0181089—the publication of the application leading to the '376 patent—during prosecution of U.S. Patent Application Nos. 16/450,531, 16/109,487, 16/219,602, 16/219,661, 15/418,537, 16/402,057, 15/881,544, 15/713,490, 15/391,276, 15/687,384, 15/275,294, 14/253,783, and 14/501,015, each of which identifies Apple, Inc. as the applicant and/or assignee.

76.     At a minimum, pursuant to 35 U.S.C. § 287(a), the filing of this Complaint constitutes notice to Apple of the '376 patent and of the manner Apple's infringement thereof.  On information and belief, Apple knows or should know that its activities induce others to directly infringe one or more claims of the '376 patent.

77.     Apple actively induces infringement of the '376 patent in at least the following manners: when Apple's customers or end users operate the Accused

Instrumentalities including the photo application included in the macOS, iOS, or iPadOS operating system software; when Apple instructs or causes its customers or end users to download and install macOS, iOS, and iPadOS software including the photo application onto the Accused Instrumentalities; and by advertising, instructing and encouraging customers and end users (e.g., in user manuals or guides) to operate the Accused Instrumentalities in an infringing manner.

78.     Apple contributes to infringement by others of one or more claims of the '376 patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(c). Apple has and continues to make, use, offer to sell, sell, and import Accused Instrumentalities knowing the same to be especially made or especially adapted for infringement of the '376 patent. The Accused Instrumentalities constitute a material or apparatus for use in practicing a patented process, constituting a material part of the invention. Such Accused Instrumentalities are not a staple article or commodity of commerce suitable for substantial non-infringing use. The lack of substantial non-infringing uses is evidenced by the fact that the Accused Instrumentalities are made, used, sold, offered for sale, and imported, with an operating system that includes by default the photo application, which in turn includes one or more infringing features.

79.     MemoryWeb is entitled to recover damages as a result of Apple's infringement of the '376 patent, including lost profits and in no event less than a reasonable royalty, together with interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284, in an amount to be proven at trial.

80.     On information and belief, Apple will continue its infringement of one or more claims of the '376 patent unless enjoined by the Court. MemoryWeb has been

irreparably harmed by Apple's infringement, and will be continue to be harmed unless and until the issuance of a permanent injunction against Apple.

## COUNT II – INFRINGEMENT OF THE '658 PATENT

81.     MemoryWeb repeats and realleges the allegations in the preceding paragraphs above as if fully set forth herein.

82.     The '658 patent is valid and enforceable.

83.     Apple has directly infringed and continues to directly infringe one or more claims of the '658 patent, both literally and under the doctrine of equivalents, by making, using, offering for sale, selling within the United States and imported into the United States, without permission or license from MemoryWeb, products and services that embody or practice the inventions disclosed and claimed in the '658 patent in violation of 35 U.S.C. § 271(a).

84.     To the extent Apple does not perform each and every step of a particular asserted method claim of the '658 patent, Apple directs or controls the performance by others of each step of such asserted method claims of the '658 patent that is does not perform itself, such that the performance of each step of the asserted method claims can be attributed to Apple.

85.     Apple actively induces direct infringement by others of one or more claims of the '658 patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(b).  For example, Apple induces infringement of one or more claims of the '658 patent when end users operate Accused Instrumentalities, including the photo application, in their intended manner.

86.     On information and belief, Apple had knowledge of the technology described in the '658 patent prior to the filing of this Complaint and may have had actual knowledge of the '658 patent. Apple cited U.S. Patent Publication No. 2014/0181089—the publication of the application leading to the '376 patent (which shares a common specification with the '658 patent)—during prosecution of U.S. Patent Application Nos. 16/450,531, 16/109,487, 16/219,602, 16/219,661, 15/418,537, 16/402,057, 15/881,544, 15/713,490, 15/391,276, 15/687,384, 15/275,294, 14/253,783, and 14/501,015, each of which identifies Apple, Inc. as the applicant and assignee.

87.     At a minimum, pursuant to 35 U.S.C. § 287(a), the filing of this Complaint constitutes notice to Apple of the '658 patent and of Apple's manner of infringement thereof. On information and belief, Apple knows or should know that its activities induce others to directly infringe one or more claims of the '658 patent.

88.     Apple actively induces infringement of the '658 patent in at least the following manners: when Apple's customers or end users operate the Accused Instrumentalities including the photo application included in the macOS, iOS, or iPadOS operating system software; when Apple instructs or causes its customers or end users to download and install macOS, iOS, and iPadOS software including the photo application onto the Accused Instrumentalities; and by advertising, instructing and encouraging customers and end users (e.g., in user manuals or guides) to operate the Accused Instrumentalities in an infringing manner.

89.     Apple contributes to infringement by others of one or more claims of the '658 patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(c). Apple has and continues to make, use, offer to sell, sell, and import products and

29

services knowing the same to be especially made or especially adapted for infringement of the '658 patent.  The Accused Instrumentalities constitute a material or apparatus for use in practicing a patented process, constituting a material part of the invention.  Such Accused Instrumentalities are not a staple article or commodity of commerce suitable for substantial non-infringing use.  The lack of substantial non-infringing uses is evidenced by the fact that the Accused Instrumentalities are made, used, sold, offered for sale, and imported, with an operating system that includes by default the photo application, which in turn includes one or more infringing features.

90.     MemoryWeb is entitled to recover damages as a result of Apple's infringement of the '658 patent, including lost profits and in no event less than a reasonable royalty, together with interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284, in an amount to be proven at trial.

91.     On information and belief, Apple will continue its infringement of one or more claims of the '658 patent unless enjoined by the Court.  MemoryWeb has been irreparably harmed by Apple's infringement, and will be continue to be harmed unless and until the issuance of a permanent injunction against Apple.

## COUNT III – INFRINGEMENT OF THE '228 PATENT

92.     MemoryWeb repeats and realleges the allegations in the preceding paragraphs above as if fully set forth herein.

93.     The '228 patent is valid and enforceable.

94.     Apple has directly infringed and continues to directly infringe one or more claims of the '228 patent, both literally and under the doctrine of equivalents, by making, using, offering for sale, selling within the United States and imported into the United

States, without permission or license from MemoryWeb, Accused Instrumentalities that embody or practice the inventions disclosed and claimed in the '228 patent in violation of 35 U.S.C. § 271(a).

95.     To the extent Apple does not perform each and every step of a particular asserted method claim of the '228 patent, Apple directs or controls the performance by others of each step of such asserted method claims of the '228 patent that is does not perform itself, such that the performance of each step of the asserted method claims can be attributed to Apple.

96.     Apple actively induces direct infringement by others of one or more claims of the '228 patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(b).  For example, Apple induces infringement of one or more claims of the '228 patent when end users operate Accused Instrumentalities, including the photo application, in their intended manner.

97.     On information and belief, Apple had knowledge of the technology described in the '228 patent prior to the filing of this Complaint and may have had actual knowledge of the '228 patent.  Apple cited U.S. Patent Publication No. 2014/0181089—the publication of the application leading to the '228 patent—during prosecution of U.S. Patent Application Nos. 16/450,531, 16/109,487, 16/219,602, 16/219,661, 15/418,537, 16/402,057, 15/881,544, 15/713,490, 15/391,276, 15/687,384, 15/275,294, 14/253,783, and 14/501,015, each of which identifies Apple, Inc. as the applicant and/or assignee.

98.     At a minimum, pursuant to 35 U.S.C. § 287(a), the filing of this Complaint constitutes notice to Apple of the '228 patent and of the manner Apple's infringement

thereof.  On information and belief, Apple knows or should know that its activities induce others to directly infringe one or more claims of the '228 patent.

99.    Apple actively induces infringement of the '228 patent in at least the following manners: when Apple's customers or end users operate the Accused Instrumentalities including the photo application included in the macOS, iOS, or iPadOS operating system software; when Apple instructs or causes its customers or end users to download and install macOS, iOS, and iPadOS software including the photo application onto the Accused Instrumentalities; and by advertising, instructing and encouraging customers and end users (e.g., in user manuals or guides) to operate the Accused Instrumentalities in an infringing manner.

100.    Apple contributes to infringement by others of one or more claims of the '228 patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(c).  Apple has and continues to make, use, offer to sell, sell, and import Accused Instrumentalities knowing the same to be especially made or especially adapted for infringement of the '228 patent.  The Accused Instrumentalities constitute a material apparatus for use in practicing a patented process, constituting a material part of the invention.  Such Accused Instrumentalities are not a staple article or commodity of commerce suitable for substantial non-infringing use.  The lack of substantial non-infringing uses is evidenced by the fact that the Accused Instrumentalities are made, used, sold, offered for sale, and imported, with an operating system that includes by default the photo application, which in turn includes one or more infringing features.

101.    MemoryWeb is entitled to recover damages as a result of Apple's infringement of the '228 patent, including lost profits and in no event less than a

32

reasonable royalty, together with interest and costs as fixed by this Court pursuant to 35

U.S.C. § 284, in an amount to be proven at trial.

102.    On information and belief, Apple will continue its infringement of one or

more claims of the '228 patent unless enjoined by the Court.  MemoryWeb has been

irreparably harmed by Apple's infringement, and will be continue to be harmed unless and

until the issuance of a permanent injunction against Apple.

**COUNT IV – INFRINGEMENT OF THE '020 PATENT**

103.    MemoryWeb repeats and realleges the allegations in the preceding

paragraphs above as if fully set forth herein.

104.    The '020 patent is valid and enforceable.

105.    Apple has directly infringed and continues to directly infringe one or more

claims of the '020 patent, both literally and under the doctrine of equivalents, by making,

using, offering for sale, selling within the United States and imported into the United

States, without permission or license from MemoryWeb, Accused Instrumentalities that

embody or practice the inventions disclosed and claimed in the '020 patent in violation of

35 U.S.C. § 271(a).

106.    To the extent Apple does not perform each and every step of a particular

asserted method claim of the '020 patent, Apple directs or controls the performance by

others of each step of such asserted method claims of the '020 patent that is does not

perform itself, such that the performance of each step of the asserted method claims can

be attributed to Apple.

107.    Apple actively induces direct infringement by others of one or more claims of

the '020 patent, either literally or under the doctrine of equivalents, in violation of 35

33

U.S.C. § 271(b).  For example, Apple induces infringement of one or more claims of the '020 patent when end users operate Accused Instrumentalities,  including the photo application, in their intended manner.

108.   On information and belief, Apple had knowledge of the technology described in the '020 patent prior to the filing of this Complaint and may have had actual knowledge of the '020 patent.  Apple cited U.S. Patent Publication No. 2014/0181089—the publication of the application leading to the '020 patent—during prosecution of U.S. Patent Application Nos. 16/450,531,  16/109,487,  16/219,602,  16/219,661,  15/418,537, 16/402,057,  15/881,544,  15/713,490,  15/391,276,  15/687,384,  15/275,294,  14/253,783, and 14/501,015,  each of which identifies  Apple, Inc. as the applicant and/or assignee.

109.   At a minimum, pursuant to 35 U.S.C. § 287(a), the filing of this Complaint constitutes notice to Apple of the '020 patent and of the manner Apple's infringement thereof.  On information and belief, Apple knows or should know that its activities induce others to directly infringe one or more claims of the '020 patent.

110.   Apple actively induces infringement of the '020 patent in at least the following manners: when Apple's customers or end users operate the Accused Instrumentalities including the photo application included in the macOS, iOS, or iPadOS operating system software; when Apple instructs or causes its customers or end users to download and install macOS, iOS, and iPadOS software including the photo application onto the Accused Instrumentalities;  and by advertising, instructing and encouraging customers and end users (e.g., in user manuals or guides) to operate the Accused Instrumentalities in an infringing manner.

111.    Apple contributes to infringement by others of one or more claims of the '020 patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(c).  Apple has and continues to make, use, offer to sell, sell, and import Accused Instrumentalities knowing the same to be especially made or especially adapted for infringement of the '020 patent.  The Accused Instrumentalities constitute a material apparatus for use in practicing a patented process, constituting a material part of the invention.  Such Accused Instrumentalities are not a staple article or commodity of commerce suitable for substantial non-infringing use.  The lack of substantial non-infringing uses is evidenced by the fact that the Accused Instrumentalities are made, used, sold, offered for sale, and imported, with an operating system that includes by default the photo application, which in turn includes one or more infringing features.

112.    MemoryWeb is entitled to recover damages as a result of Apple's infringement of the '020 patent, including lost profits and in no event less than a reasonable royalty, together with interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284, in an amount to be proven at trial.

113.    On information and belief, Apple will continue its infringement of one or more claims of the '020 patent unless enjoined by the Court.  MemoryWeb has been irreparably harmed by Apple's infringement, and will be continue to be harmed unless and until the issuance of a permanent injunction against Apple.

**PRAYER FOR RELIEF**

WHEREFORE, MemoryWeb respectfully requests that this Court:

35

A.      enter judgment that Apple has infringed one or more claims of the '376 patent, the '658 patent, the '228 patent, and the '020 patent, in violation of the United States Code, including, without limitation, 35 U.S.C. § 271;

B.      enter an order enjoining Apple, its officers, agents, servants, representatives, and employees, and all persons acting in concert with them, and each of them, from infringing the '376 patent, the '658 patent, the '228 patent, and the '020 patent;

C.      award MemoryWeb damages adequate to compensate MemoryWeb for Apple's past infringement, and any continuing or future infringement through the date such judgment is entered, including prejudgment and post-judgment interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

D.      find Apple's infringement is or has been willful;

E.      increase damages awarded to MemoryWeb in this case to three times the damages amount found by the jury or assessed by the Court pursuant to 35 U.S.C. § 284;

F.      declare this case to be an "exceptional case" under 35 U.S.C. § 285 and awarding MemoryWeb its attorneys' fees and costs incurred in bringing and prosecuting this action; and

G.      award MemoryWeb such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

MemoryWeb respectfully requests a trial by jury on all matters and issues properly tried to a jury pursuant to Federal Rules of Civil Procedure 38 and 39 and other applicable law.

Dated: May 25, 2021                          Respectfully submitted,

*/s/ Arthur Gollwitzer III*

Arthur Gollwitzer III
  Texas Bar No. 24073336
MICHAEL BEST & FRIEDRICH LLP
620 Congress Avenue, Suite 200
Austin, TX 78701
Telephone: 512.640.3160
Facsimile: 512.640.3170
agollwitzer@michaelbest.com

*/s/ Daniel J. Schwartz*

Daniel J. Schwartz (*pro hac vice* to be requested)
Zachary Sorman (*pro hac vice* to be requested)
Angelo J. Christopher (*pro hac vice* to be requested)
NIXON PEABODY LLP
70 West Madison, Suite 3500
Chicago, IL 60602-4224
Tel: 312-977-4400
djschwartz@nixonpeabody.com
achristopher@nixonpeabody.com
zsorman@nixonpeabody.com

***Attorneys for Plaintiff MemoryWeb, LLC***